Edwin F. McPherson – State Bar No. 106084
emcpherson@mcpherson-llp.com
Pierre B. Pine – State Bar No. 211299
ppine@mcpherson-llp.com
**McPHERSON LLP**
1801 Century Park East
24th Floor
Los Angeles, CA 90067
Tel:(310)553-8833
Fax:(310)553-9233

Attorneys for Plaintiff ALAN U. SCHWARTZ, TRUSTEE OF THE TRUST UNDER ARTICLE THREE OF THE LAST WILL AND TESTAMENT OF TRUMAN CAPOTE DATED MAY 4, 1981

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN U. SCHWARTZ, TRUSTEE OF THE TRUST UNDER ARTICLE THREE OF THE LAST WILL AND TESTAMENT OF TRUMAN CAPOTE DATED MAY 4, 1981,<br><br>Plaintiff,<br><br>v.<br><br>PARAMOUNT PICTURES CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 2:20-cv-11470-SB-JPR<br><br>Assigned To Hon. Stanley Blumenfeld, Jr.<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF ALAN U. SCHWARTZ, TRUSTEE OF THE TRUST UNDER ARTICLE THREE OF THE LAST WILL AND TESTAMENT OF TRUMAN CAPOTE DATED MAY 4, 1981 TO REMAND CASE TO SUPERIOR COURT**<br><br>Date: February 26, 2021<br>Time: 8:30 a.m.<br>Ctrm: 6C |

Plaintiff Alan U. Schwartz, Trustee of the Trust Under Article Three Of The Last Will and Testament of Truman Capote Dated May 4, 1981 hereby submits the following Reply Memorandum of Points and Authorities In Support of Motion To Remand Case to Superior Court:

///

///

## **TABLE OF CONTENTS**

**PAGE**

I. **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

    A. **PREFATORY STATEMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

    B. **SUMMARY OF ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

        1. **Plaintiff's Use Of The Term "Derivative Work."**. . . . . . . . . . . . . -6-

        2. **Paramount's Discussion Of The *Stewart* Case**.. . . . . . . . . . . . . . -7-

        3. **Paramount's Reliance On The Draft Complaint**.. . . . . . . . . . . . . -8-

II. **DISCUSSION**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

    A. **PARAMOUNT'S STATEMENT OF FACTS SAYS TOO MUCH**. . . . -8-

        1. **Paramount's Own Arguments Illustrate That This Is A Contract Case**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

        2. **Paramount Improperly Exceeds The Four Corners Of The Complaint**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

    B. **THE "DERIVATIVE WORK" ALLEGATION DOES NOT CONFER REMOVAL JURISDICTION**... . . . . . . . . . . . . . . . . . . . . -11-

        1. **The Complaint Does Not Allege *Infringement* Against Paramount**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

        2. **The "Derivative Work" Allegations Are "Incidental."**. . . . . . . -13-

    C. **PARAMOUNT'S CLAIMS TO "FOREIGN" RIGHTS DO NOT CONFER REMOVAL JURISDICTION**.. . . . . . . . . . . . . . . . -15-

    D. **THE CAPOTE TRUST'S PRE-LITIGATION CORRESPONDENCE DOES NOT CONFER REMOVAL JURISDICTION**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

    E. **SANCTIONS REMAIN WARRANTED**... . . . . . . . . . . . . . . . . . . . -19-

III. **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bank Melli Iran v. Pahlavi*,
　58 F.3d 1406 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-, -11-

*Borden v. Katzman*,
　881 F.2d 1035 (11th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*Brush Creek Media, Inc. v. Boujaklian*,
　2002 U.S.Dist.LEXIS 15321 at *13 (N.D.Cal. 2002). . . . . . . . . . . . . . . . . . . -14-

*Caterpillar, Inc. v. Williams*,
　482 U.S. 386 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Chase v. Shop 'N Save Ware-house Foods*,
　110 F.3d 424 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Cohn v. Petsmart, Inc.*,
　281 F.3d 837 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Crea v. City of Hope*,
　2010 U.S.Dist.LEXIS 146525, at *25 (C.D. Cal. 2010). . . . . . . . . . . . . . . . . . -9-

*Duncan v. Stuetzle*,
　76 F.3d 1480 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Effects Assocs. v. Cohen*,
　817 F.2d 72 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -17-

*Ethridge v. Harbor House Restaurant*,
　861 F.3d 1389 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Fox v. iVillage*,
　2005 U.S.Dist.LEXIS 31918, at *6 (N.D.Cal. 2005). . . . . . . . . . . . . . . . . . . -14-

*Gully v. First National Bank*,
　299 U.S. 109, 57 S.Ct. 96, 81 L. Ed. 70 (1936). . . . . . . . . . . . . . . . . . . . . . -9-

*Harris v. Proteus E2 Prods.*,
　2012 U.S.Dist.LEXIS 199826, at *6 (C.D.Cal. 2012). . . . . . . . . . . . . . . . . . -14-

*Hepburn v. Concord Music Grp. LLC*,
　2015 U.S.Dist.LEXIS 59482, at *12 (C.D.Cal. 2015). . . . . . . . . . . . . . . . . . -14-

*Ho v. Pinsukanjana*,
　2018 U.S.Dist.LEXIS 89384, at *1 (N.D.Cal. 2018). . . . . . . . . . . . . . . . . . . -19-

*Humphreys & Partners Architects LP v. Atl. Dev. & Invs. Inc.*,
　2016 U.S.Dist.LEXIS 50977, at *14 (D.Ariz.2016). . . . . . . . . . . . . . . . . . . -13-

*JustMed, Inc. v. Byce*,
   600 F.3d 1118 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Khoja v. Orexigen Therapeutics Inc.*,
   899 F.3d 988 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -10-

*Le v. Capital One Auto Fin.*,
   2018 U.S.Dist.LEXIS 187518, at *5 (N.D.Cal. 2018). . . . . . . . . . . . . . . . . . . . . -18-

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*,
   478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986).. . . . . . . . . . . . . . . -9-, -15-

*Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*,
   2017 U.S.Dist.LEXIS 191530 (E.D.Tex. 2017). . . . . . . . . . . . . . . . . . . . . -12-, -13-

*Rivet v. Regions Bank*,
   522 U.S. 470, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998).. . . . . . . . . . . . . . . -9-, -15-

*Royalty Control Corp. v. Sanco, Inc.*,
   175 U.S.P.Q. 641 (N.D. Cal. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*,
   336 F.3d 982 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -13-

*Sobhani v. @radical.media, Inc.*,
   257 F.Supp.2d 1234 (C.D.Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*Topolos v. Caldewey*,
   698 F.2d 991 (9th Cir.1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-, -13-, -14-

*U.S. Bank Nat'l Ass'n v. Robinson*,
   2019 U.S.Dist.LEXIS 107230, at *1 (C.D.Cal. 2019).. . . . . . . . . . . . . . . . . . . . . -18-

*Wells Fargo Bank, N.A. v. Weber*,
   2015 U.S.Dist.LEXIS 117365, at *2-3 (E.D.Cal. 2015). . . . . . . . . . . . . . . . . . . . -18-

**STATUTES**

17 U.S.C. § 106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -12-

**RULES**

Fed. R. Civ. P. 56(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-, -11-

**OTHER AUTHORITIES**

Nimmer § 12.01[A][1][c]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. PREFATORY STATEMENT

Paramount's position is entirely based on form over substance. Paramount seizes upon the Capote Trust's recitation (to better inform the Court) in the Complaint of the background leading up to the subject 1991 Agreement to assert that this Court should pay more attention to the *background* than the *contract* (which is the center of this dispute). It then seizes another opportunity, claiming that the Capote Trust's use of the word "derivative," which is a word used in the Copyright Act, automatically converts this case from a contract case to a copyright infringement case, though the word "infringement" appears nowhere in the Complaint. Finally, Paramount devotes a considerable amount of space improperly discussing its distorted version of the merits of the case, obviously directing its discussion to the media, and not to the Court.

### B. SUMMARY OF ARGUMENT

Paramount does not dispute that the removal statute is "strictly construed against removal jurisdiction," and any doubt must be resolved in favor of remand. *See Ethridge v. Harbor House Restaurant*, 861 F.3d 1389, 1393-1394 (9th Cir. 1988); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). Nor does Paramount dispute that removal jurisdiction exists in this case if, and only if: "(1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control the claims." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010).

Nor does Paramount dispute that, when removal involves a contract, courts in the ***Ninth*** Circuit must apply the "incidental" test, and direct their inquiry to the "primary and controlling purpose," "principal issue," "fundamental controversy," and "gist" or "essence" of the plaintiff's claim. *Topolos v. Caldewey*, 698 F.2d 991, 993 (9th Cir.1983).

///

Paramount asserts three reasons for removal, which clearly run afoul of these precepts.[1] Even if the Court "incorporates" Paramount's exhibits into the Complaint (it should not), Paramount's reasons for jurisdiction are readily dispatched:

### 1. Plaintiff's Use Of The Term "Derivative Work."

Paramount's Introduction misleadingly asserts that the Complaint seeks declarations that (a) the Capote Trust owns all motion picture rights in the Story and (b) a screenplay that Paramount "likes" is an "*infringing* 'derivative work.'" (Dkt. 20, at Page ID 521:2-6.) Paramount not only thereby mischaracterizes the relief sought, but attempts to create a ***false equivalence*** between (a) and (b). To the contrary, the 18-page Complaint refers to the Paramount Screenplay in just a few lines of text, and the term "derivative work" appears only in its final sentence, after a detailed explanation of why all 1991 Agreement option rights have reverted to the Capote Trust, based on contract theory alone. Significantly, the Complaint does not even allege a single act by Paramount of "infringement;" it merely alleges that Paramount "liked" that screenplay - not even that Paramount actually wrote it. The request that the Paramount Screenplay be deemed a "derivative work" thus constitutes "forward looking" relief on ***contract*** rights, rather than direct relief for prior copyright infringement, and in any event is at best incidental to the main thrust of the Complaint's contractual basis.

Paramount's reliance on *Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*, 336 F.3d 982, 987 (9th Cir. 2003) is nonsensical. *Scholastic* simply does not hold that a mere comparison of two works creates a question of "infringement," or otherwise invokes a remedy under the Copyright Act. Rather, the court actually dismissed the

---

[1] Paramount's Notice of Removal asserted four grounds to remove. The first was entitled "The Complaint Seeks A Declaration of Ownership Under The Copyright Act" and argued that a dispute over ownership alone creates grounds for removal. (Dkt. 1, Page ID 3:9-4:10.) Paramount abandons that argument, thus conceding it was meritless. Oddly, Paramount now claims that the Motion's arguments in opposition thereto have no place and were only included to distract from the *Stewart* decision. That is patently false; the Motion simply responded to Paramount's assertions.

infringement claim because it was "really" filed to determine ownership under a publishing agreement.

### 2. **Paramount's Discussion Of The *Stewart* Case.**

Paramount also falsely claims that the Capote Trust seeks an interpretation of the "Copyright Act" because of its reference to *Stewart v. Abend*. (Dkt. 20, at Page ID 521:24-522:28.) In so doing, Paramount attempts to conflate three different events that caused Paramount to lose various rights. The rights in dispute in the Complaint are (a) the ***contractual rights*** under the **1991** Agreement that Paramount lost due to its non-compliance with the contract terms. The purported "foreign" rights that Paramount "now" seeks to dispute are not at issue in the Complaint, but relate instead to (b) the ***renewal rights*** that Paramount had in **1958**, and lost under the holding in *Stewart,* which prompted Paramount to re-option those rights in the 1991 Agreement in the first place. And, the specific **1958** "foreign" rights that Paramount "now" seeks to defend were (c) resolved by the parties' settlement, after Capote's death and after the *Stewart* decision. This was the 1991 Agreement itself, wherein Paramount ***agreed*** on the effect of *Stewart*, agreed to option "all" rights, and ***waived*** any further claims of copyright ownership outside the 1991 Agreement, thus removing any "new" interpretation issues of the "Copyright Act" or *Stewart* in any event.

Paramount's attack on the ***source*** of the Capote Trust's right to grant an option is thus a bridge too far. The Complaint simply does not address any dispute, or seek any relief, concerning "foreign" renewal rights from 1958. Instead, Paramount seeks to evade its settlement, and insert that "new" dispute here - claiming that it never needed to option "foreign" rights in 1991 (though it did anyway), which somehow makes the 1991 Agreement's option of "foreign" rights unenforceable (despite Paramount's waiver of any such claim). Those issues cannot create removal jurisdiction; they are at best a *defense* to the 1991 Agreement and, in any event, waived by Paramount, precluding any need to interpret the Copyright Act or *Stewart* at all. The well-pleaded complaint rule compels the conclusion that the Complaint is based upon contract law, and nothing else.

### 3. Paramount's Reliance On The Draft Complaint.

Paramount also misleadingly claims that the Capote Trust prepared a "virtually identical" draft infringement complaint, and then "strategically" filed in state court to avoid attorneys' fees. (Dkt. 1, at 7:11.) First, the prior draft was not "virtually identical." Moreover, after the draft was prepared and sent, the Capote Trust determined that filing this case as a copyright case would be wrong; this is a contract case. The Capote Trust's legal right to file a state contract claim cannot be second guessed by Paramount merely because the Capote Trust, at one point, considered filing an erroneous federal claim.

Even if the Complaint had alleged any single act of infringement (which it did not), the Capote Trust is the "master of its claims," and may exclusively rely on state law actions for a state forum. *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987). Even where copyright is involved, the plaintiff may frame his action "either as one for infringement or for breach of contract." *Effects Assocs. v. Cohen,* 817 F.2d 72, 73 (9th Cir. 1987).)

## II.  DISCUSSION

### A.  PARAMOUNT'S STATEMENT OF FACTS SAYS TOO MUCH

#### 1. Paramount's Own Arguments Illustrate That This Is A Contract Case.

Even if matters outside the Complaint could be considered (which they cannot, as discussed below), Paramount's "statement of facts" ***judicially admits*** that the Declaratory Relief action will be decided based upon contract law. Citing only the 1991 Agreement attached to its Opposition, Paramount improperly ***argues the merits*** of the case by defensively quoting various option terms. Paramount concludes that, because it "<u>did</u> exercise the Option pursuant to paragraph III.B," neither the "Reversionary Period" nor the "Additional Option Period" ever "came into existence." (Dkt. 20, Page ID 524:1-525:19.) This judicial admission is palpable: Paramount's only merits-based defense relating to the option terms in the 1991 Agreement is based solely upon contract law - rather than Copyright law - thus precluding removal jurisdiction.

### 2. **Paramount Improperly Exceeds The Four Corners Of The Complaint**.

Paramount presents almost seven pages of an alternative Statement of Facts, most of which "facts" are not in the Complaint, and cannot be considered on this Motion. Paramount does not dispute the Motion's authorities establishing that removal jurisdiction must appear on the face of a well-pleaded complaint "unaided by the answer or the petition for removal." *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L. Ed. 70 (1936). Nor does Paramount dispute that a defense "is not part of a plaintiff's properly pleaded statement of his or her claim" or that a "defense that raises a federal question is inadequate to confer federal jurisdiction." *Rivet v. Regions Bank*, 522 U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998); *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986).

To support its extensive alternative "facts," Paramount, in a brief footnote, relies on the "incorporation by reference" doctrine, only citing the unpublished case *Crea v. City of Hope,* 2010 U.S.Dist.LEXIS 146525, at *25 (C.D. Cal. 2010). (Dkt. 20, at Page ID 524:23-28.) However, *Crea* is not current law. The Ninth Circuit has since held the "incorporation by reference" doctrine cannot be used to create a defense, even on a motion to dismiss. *Khoja v. Orexigen Therapeutics Inc.*, 899 F.3d 988 (9th Cir. 2018). *Khoja* initially confirms the rule that "incorporation" is permitted only "if the plaintiff refers ***extensively*** to the document or the document ***forms the basis of the plaintiff's claim***" (*id.* (emphasis added) The Ninth Circuit then broke new ground, stating:

> Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts. . . . For this same reason, . . . it is

> ***improper* to assume the truth of an incorporated document *if
> such assumptions only serve to dispute facts stated in a well
> pleaded complaint***.

*Khoja,* at 1003 (emphasis added). Thus, both removal law and "incorporation by reference" law prevent defensive matters from creating removal jurisdiction.

Paramount proffers four exhibits, which are not eligible for "incorporation" under Ninth Circuit law, which causes its "facts" to exceed what the Court may consider here.

<u>December 10, 1990 Letter (Exh. A)</u>: Paramount asserts that this letter reflects the "understanding" of the parties before entering into the 1991 Agreement. (Dkt. 20-1, Page ID 546:8-18.) Such use constitutes (a) a misleading slice of "negotiations" without giving the Capote Trust an evidentiary method to respond, and (b) Paramount's *defense* that the contractual option is *different* than alleged, thus running afoul of *Khoja*.

Nor is the December 10, 1990 letter "extensively" referenced. That the Complaint mentions that Paramount "initially took the position" that the Capote Trust was "obligated" to enter into a new agreement (Dkt. 1-2, Page ID 20:15-16), the Capote Trust "pointed out" language from *Stewart* (*id,* at 17), and the Capote Trust had a "superior bargaining position" (*id.* at 27-28), and that the Complaint occasionally quotes unidentified oral or written negotiations (Dkt. 1-2, Page ID 21-23), does not constitute the "extensive" references required. Paramount links but a single quote in the Complaint to this letter. Even worse, the December 10, 1990 letter is not the "basis" for the Capote Trust's claim for Declaratory Relief, which is based solely on the 1991 Agreement itself.

Finally, the letter's authenticity is in question. *Litigation* counsel fails to state any facts supporting that he has personal knowledge of that *decades*-old letter. Fed. R. Civ. P. 56(c)(4); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995).

<u>1991 Agreement (Exh. B)</u>: Paramount uses the 1991 Agreement to defend against the merits of the Declaratory Relief action. Such use to "prove up" its contract-based defense also runs afoul of *Khoja*. In addition, as with Exhibit A, the decades-old agreement is not properly authenticated. FRCP 56(c)(4); *Bank Melli Iran.*

<u>August 19, 2020 Letter (Exh. C)</u>: Paramount's counsel transposes Exhibits "C" and "D" in his declaration.  The Capote Trust refers to the letters of the actual exhibits.  The "incorporation" doctrine cannot apply here either, as this August 19, 2020 letter was not expressly referenced in the Complaint at all, and is not the "basis" for the Complaint.

<u>April 29, 2020 E-mail (Exh. D)</u>: This e-mail also was not extensively referenced in the Complaint, and is not the "basis" for the Capote Trust's claim. The Complaint merely states that "attorneys" for the Capote Trust "exchanged *letters*" with Paramount's attorneys, confirming that it exclusively owned and controlled all television rights. (Dkt. 1-2, Page ID 26:26-27:2.)  Even if the "incorporation" doctrine could be so broadly triggered (which it cannot), nothing in the exhibit suggests that it is a "letter" from an "attorney" limited to "television" rights, or that it is one of the "letters" mentioned at all. And again, *litigation* counsel fails to properly authenticate the document; he was not a recipient, and fails to establish personal knowledge.  FRCP 56(c)(4); *Bank Melli Iran.*

As none of the four exhibits properly may be considered on this Motion, Paramount's seven pages of "facts," based thereon, cannot be considered either.

### B. THE "DERIVATIVE WORK" ALLEGATION DOES NOT CONFER REMOVAL JURISDICTION.

Despite its lengthy argument and multiple string cites, Paramount fails to show how the Complaint's single line requesting a declaration that "the Paramount Screenplay is a derivative work of Capote's Work," placed at the very end of an 18-page, contract-based complaint, converts a textbook contract dispute into removal jurisdiction.

#### 1. The Complaint Does Not Allege *Infringement* Against Paramount.

Paramount fails to identify a single *prior* "act" alleged in the Complaint that could presently amount to infringement *by Paramount*.  With no such "acts" alleged, the declaratory relief sought can only be described as "forward looking."

For example, Paramount broadly claims that 17 U.S.C. Section 106 permits only copyright owners to "exploit" derivative works, falsely equating vague "exploitation" to "infringement." Instead, Section 106 states that a copyright owner has exclusive rights to

"***prepare*** derivative works" (emphasis added). The Complaint does not allege that Paramount "prepared" a derivative work, but only alleges that, while negotiating for Paramount to produce the television series, Paramount's executives had selected a screenplay that they "liked." (Dkt. 1, at 31:5-8.) Paramount's "selection," "shopping" of the project, or stated intent "to sell the project[2] to a streaming platform" (Dkt. 1-2, Page ID 28:8) also is not alleged to constitute an infringing act of "copying." *See* 17 U.S.C. § 106. Paramount concedes this, and only argues that its aims "would" constitute infringement, but only if successfully completed. (Dkt. 20, Page ID 532:17-21.) There is simply no past alleged "act" by Paramount that presently gives rise to a Copyright Act remedy.

Moreover, the Capote Trust did not file the Complaint because Paramount liked the Paramount Screenplay; the Capote Trust filed suit because Paramount claimed that it ***owned***, by contract, the rights to the underlying Story, and could produce future projects without its consent, whether based on the Paramount Screenplay or not. That claim of ownership also does not constitute a claim for infringement. *Borden v. Katzman*, 881 F.2d 1035, 1038 (11th Cir. 1989) (exercise of ownership rights is a state law question).

Paramount's long strings of cases are readily distinguishable, as none involves the declaratory relief requested here, which "looks forward" to a work ***not*** alleged to be created by the defendant. The first case, *Sobhani v. @radical.media, Inc*., 257 F.Supp.2d 1234 (C.D.Cal. 2003), was a true infringement case by a director of "Spec Commercials" against a defendant company that had already infringed by selling similar commercials. No "contract ownership rights" were involved, removal jurisdiction was not at issue, and the court did not rely on the definition of "derivative work" for jurisdiction.

Many of Paramount's other cases are similarly inapposite. For instance, Paramount cannot properly rely on *Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, 2017 U.S.Dist.LEXIS 191530 (E.D.Tex. 2017), which holds that, in order to determine jurisdiction in a declaratory relief action, the court must ask

---

[2] In contrast, the Complaint alleges no intent to sell the "Screenplay."

"'whether, absent the availability of declaratory relief, the instant case could nevertheless have been brought to federal court.'" *Id.* As the Capote Trust does not allege any prior infringement, the answer here is "no." *See also Humphreys & Partners Architects LP v. Atl. Dev. & Invs. Inc.,* 2016 U.S.Dist.LEXIS 50977, at *14 (D.Ariz.2016) (case did ***not*** involve declaratory relief for mere "derivative works").

Paramount also misleadingly cites *Scholastic*'s description of *Topolos v. Caldewey*, 698 F.2d 991 (9th Cir. 1983). Paramount contends that *Scholastic* holds (that *Topolos* held) that a mere comparison of two works establishes jurisdiction. However, as *Scholastic* noted, *Topolos* initially found jurisdiction "because it was clear that Topolos had successfully fulfilled the pleading requirements by alleging ownership and infringement." *Scholastic,* 336 F.3d at 987. Only then, did *Scholastic* note the two works should be compared to "warrant a finding of ***infringement***." (*Id.* (emphasis added).) ***No*** case suggests ***that a mere comparison of works to determine the contractual right to use them amounts to "infringement," much less exclusive federal jurisdiction.***[3]

Paramount's description of *Topolos* is also misleading. When *Topolos* states that federal courts have jurisdiction only when ownership is the "sole question," *Topolos's* statement is based on the fact that other "acts" of infringement were in fact alleged which still had to be decided as to that particular defendant. In contrast, the 1991 Agreement will determine the parties' rights in the Story, including the right to produce future (derivative) projects. No "infringement" by ***Paramount*** is alleged or will be determined.

### 2. The "Derivative Work" Allegations Are "Incidental."

Paramount claims that the Motion cites only "one" case, from New York (*Stepdesign*), holding that state contract actions which "incidentally" involve copyright

---

[3] Paramount also misleadingly distinguishes *Scholastic,* claiming that, unlike the *Scholastic* defendant, it has not stipulated "not to" move forward with the series. However, the absence of a stipulation is no substitute for actual allegations of infringement. In any event, Paramount ***waived*** any rights to the Story except as stated in the 1991 Agreement. (*See* Dkt. 20-3, Page ID 568, par. 9; Page ID 590, par. C.)

do not qualify for removal jurisdiction (Dkt. 20, Page ID 533:13-15.). It ignores the Motion's ample Ninth Circuit authority, including *Topolos*, 698 F.2d at 993, supporting the "incidental" rule and the corollary rule oft repeated in the Motion (and not disputed by Paramount) that, where a case involves a contract, courts must direct their jurisdictional inquiry to the "primary and controlling purpose" etc. (*Id.; see also Royalty Control Corp. v. Sanco, Inc.*, 175 U.S.P.Q. 641 (N.D. Cal. 1972) (cited by *Topolos*).

The Ninth Circuit's "incidental" rule is alive and well in declaratory relief cases.[4] In *Hepburn v. Concord Music Grp. LLC,* 2015 U.S.Dist.LEXIS 59482, at *12 (C.D.Cal. 2015), the Central District not only quoted *Topolos's* "incidental" rule but again reiterated that "[i]n deciding on which side of this line an action falls," courts look to "primary and controlling purpose," "principal issue," "fundamental controversy," and the "gist" or "essence" of the plaintiff's claim. (*Id.* (holding action did not "arise under" the Copyright Act where complaint sought declaration of ownership in compositions, even where interest arose by co-authorship rather than contractual transfer); *see also Harris v. Proteus E2 Prods*., 2012 U.S.Dist.LEXIS 199826, at *6 (C.D.Cal. 2012) (relying on *Topolos* "incidental" test to reject jurisdiction); *Fox v. iVillage*, 2005 U.S.Dist.LEXIS 31918, at *6 (N.D.Cal. 2005) ("Courts will generally dismiss actions 'which fundamentally assert contract claims and only incidentally involve patents, copyrights or trademarks"); *Brush Creek Media, Inc. v. Boujaklian,* 2002 U.S.Dist.LEXIS 15321 at *13 (N.D.Cal. 2002) (applying "incidental" rule in *Topolos*). Given that the "incidental" rule persists, Nimmer § 12.01[A][1][c] indeed reasonably concludes that the question boils down to whether the aspect of the case that involves the Copyright Act is "a big deal."

The controlling factor here is that the Paramount Screenplay is only very briefly mentioned twice in the Complaint, with no allegation of infringement, to wit: first, that Paramount's executives "liked" it, and then in the last sentence seeking declaratory

---

[4] That the Second Circuit in 2000 may have abandoned the "incidental" rule is irrelevant, as it remains the law in the Ninth Circuit. *See* recent cases above.

relief. (Dkt. 1, at 31:5-8, 32:17.)  Clearly, the Paramount Screenplay is not the driving force, as the allegations make up much less than 1% of the total allegations made. By comparison, the remainder of the 18-page complaint is steadfastly directed to the contractual ownership rights of the ***Story itself,*** which will ultimately control what Paramount can and cannot do with the Paramount Screenplay - or any future project - period. The Capote Trust's request that the Paramount Screenplay be deemed a derivative work should thus be viewed as a "forward looking" declaration expounding upon its ***contractual*** rights, *i.e.,* that, under the 1991 Agreement, it owns and controls the copyright to the Story, which by definition means that Paramount would not have the right to produce ***any*** derivative work, including, but not limited to, a work based on the Paramount Screenplay. That is not a copyright claim.

### C. <u>PARAMOUNT'S CLAIMS TO "FOREIGN" RIGHTS DO NOT CONFER REMOVAL JURISDICTION.</u>

Even if the Court were to "incorporate" Paramount's four exhibits (it should not), they do not confer jurisdiction. Paramount does not dispute the Motion's black letter law that a defense or potential defense "is inadequate to confer federal jurisdiction," and the plaintiff's statement of his ***own*** action is the only proper litmus test. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986); *Rivet v. Regions Bank*, 522 U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998).

In summary, Paramount claims that it did not need to option the "foreign" rights through the 1991 Agreement because it held those rights since 1958, in that they never reverted to the Capote Trust based upon *Stewart*. Yet, Paramount itself confirms:

> Throughout its Complaint, Plaintiff alleges that his *Abend* reversion resulted in <u>all</u> rights in the Story reverting to the Estate. However, this is a disputed legal issue [because] a grant of <u>foreign</u> . . . rights is not subject to an *Abend* reversion.

(Dkt. 20, Page ID 523:16-18 (emphasis added).)  Paramount thereby concedes the purported "dispute" over 1958 "foreign" rights does not appear on the face of the

Complaint. To remedy that problem, Paramount attempts to "incorporate" the December 10, 1990 letter (Exhibit A) and April 29, 2020 e-mail (Exhibit D), claiming they provide some evidence of this "dispute." Yet, even if the Court were to consider all exhibits "incorporated," they simply do not do the heavy lifting required for removal jurisdiction.

First, Paramount is incorrect: the Complaint does not merely allege that the Capote Trust obtained "all" rights via the *Stewart* decision. In the 1991 Agreement, Paramount also agreed that the Capote Trust had the ***power*** to option "all" rights, *e.g.,* had "all" those rights to give, whether "foreign" or otherwise. (Dkt. 1-2, Page ID 23:18-25-3.) Thus, Paramount places too much weight on the Complaint's discussion of *Stewart*. Those allegations form the backdrop for Paramount's decision to enter into the 1991 Agreement in the first place, and nothing in the Complaint suggests that *Stewart* or any leftover "foreign" rights continue to control in lieu of the 1991 Agreement.[5]

Second, the December 10, 1990 letter (Exhibit "A") itself only briefly states the Capote Trust's position that it did in fact own "all" rights - including foreign rights. That discussion does not supplant, and is ***consistent*** with, the allegations in the Complaint that Paramount ***subsequently*** agreed to an option of "all" rights in the 1991 Agreement.

Third, the 1991 Agreement settled and resolved any dispute over foreign rights. For example, the 1991 Agreement acknowledges that *Stewart* then expressly provides that Paramount shall "obtain a ***transfer*** of ***the*** renewal rights" to "***grant*** Paramount the right to continue distribution of the Original Picture in the United States ***and throughout the World*** in perpetuity." (Dkt. 20-3, Page ID 567, par. 6 (emphasis added).) The "Grant

---

[5] Paramount also mischaracterizes the Complaint by arguing that it contains an admission whereby "Paramount's reading of the 1991 Agreement 'makes no sense' in light of Plaintiff's (disputed) interpretation of the *Abend* reversion as resulting in Paramount losing all (as opposed to only domestic) rights in the Story." (Dkt 20, Page ID 528:25-28.) However, the Complaint, footnote 1, does ***not*** speak to *Stewart* or "foreign" rights; the "reversion" addressed is that "based upon Paramount's ***failure to produce*** the new film" - which only speaks to the issue of Paramount's loss of the 1991 rights as alleged in the Declaratory Relief action. (Dkt 1-2, Page ID 28:25-28.)

of Rights" section "confirms and conveys, grants and assigns **all** rights" and expressly extends to "*foreign* versions." " (Dkt. 20-3, Page ID 132, par. III(A) (emphasis added).) The term "territory" includes "foreign," and the term "foreign" includes "all countries . . . and any other areas in the universe." (Dkt. 20-3, Page ID 614, par. (M).) Paramount even agreed to ***pay*** the Capote Trust income from "foreign" territories and currencies. (Dkt. 20-3, Page ID 630, section III, Page ID 643, par. VIII(D).) Paramount's agreement to option and pay concedes that the Capote Trust could "transfer" or "grant" such rights.

Fourth, and incredibly, Paramount selectively ignores that the 1991 Agreement ***settled*** the parties' dispute about the effect of Capote's death, and that Paramount, as part of the ***settlement***, also further ***waived*** its right to claim "foreign" or any other rights in the Story except as set forth in the 1991 Agreement itself. (Dkt. 20-3, Page ID 568, par. 9) (intending to dispose of "all claims, demands, and causes of action arising by virtue of the death of Capote prior to renewal"); Page ID 590, ¶ C (Paramount "releases, remits, forever discharges . . . any and all claims . . . rights . . . controversies . . ."). Thus, Paramount cannot make the "foreign" rights - much less interpretation of the "Copyright Act" - an issue in this proceeding at all, because it has already waived those arguments.

Fifth, Paramount's exhibits do not suggest that it has even made a contrary claim concerning "foreign" rights since 1991. Paramount misdescribes the April 29, 2020 e-mail (Exh. "D") and its reference to "extrinsic evidence" and the "legal state of affairs." Nowhere in that document are "foreign" rights discussed. At best, the e-mail advocates only that the pre-contract circumstances are relevant to interpret the option language of the ***1991 Agreement*** - not that the Copyright Act itself must be interpreted.

Sixth, Paramount mis-decribes *Effects Assocs. v. Cohen*, 817 F.2d 72, 73 (9th Cir. 1987). That court expressly recognized that the plaintiff sought "a remedy expressly provided by the Copyright Act" by pleading "copyright infringement: ownership of the copyright, copying by the defendant and distribution for exhibition." (*Id.*) The court instead held that a separate minuscule paragraph, alleging contract for fraud purposes, did not transform infringement into breach of contract to cause a loss of jurisdiction.

1  Paramount's out-of-context quote does not undermine that the *opposite* facts exist here -
2  that the Complaint is based on state contract law, rather than Copyright infringement.
3       Nothing in this case suggests that the Capote Trust must in any way rely on
4  *Stewart* or the Copyright Act to interpret ownership rights under the 1991 Agreement.
5  Paramount's claim that the Capote Trust "erred" in its description of "foreign" rights
6  under the "Copyright Act" misses the mark - that argument lapsed when Paramount
7  signed the 1991 Agreement. Paramount's "new" assertions concerning "foreign" rights
8  are clearly barred by the 1991 Agreement's waiver clauses. Those assertions cannot
9  create removal jurisdiction. Rather, the Capote Trust's requested determination of
10 ownership rights under the 1991 Agreement is, and will always be, a contract dispute.

    **D.**    **THE CAPOTE TRUST'S PRE-LITIGATION CORRESPONDENCE DOES NOT CONFER REMOVAL JURISDICTION**.

13      Even if the Court were to "incorporate" Exhibit "C" into the Complaint (it should
14 not), that pre-litigation correspondence also does not confer removal jurisdiction. Case
15 law also rejects using pre-litigation "letters" to support removal. In *Le v. Capital One*
16 *Auto Fin.*, 2018 U.S.Dist.LEXIS 187518, at *5 (N.D.Cal. 2018), the plaintiff's letter
17 allegedly referenced 15 U.S.C § 1681. Even ***"assuming"*** (without ruling) that such letter
18 was "incorporated" into the complaint, the court held that "no similar reference is made
19 in the Complaint itself, and thus the letter has no bearing on what claims Plaintiff
20 ultimately decided to pursue." (*Id.*, at 5-6 (well-pleaded complaint rule applied; remand
21 granted); *Wells Fargo Bank, N.A. v. Weber,* 2015 U.S.Dist.LEXIS 117365, at *2-3
22 (E.D.Cal. 2015) (notice to vacate listing 12 U.S.C. § 5201 did not convert state unlawful
23 detainer claim into federal action); *U.S. Bank Nat'l Ass'n v. Robinson*, 2019
24 U.S.Dist.LEXIS 107230, at *1 (C.D.Cal. 2019) (similarly remanding).
25      *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 839 (9th Cir. 2002) is another case that is
26 readily distinguished. That a court may consider correspondence to establish the $75,000
27 amount in controversy is completely irrelevant to the issue at hand. *See Chase v. Shop*
28 *'N Save Ware-house Foods,* 110 F.3d 424, 427 (7th Cir. 1997) (rules against pleading

1 amounts in complaint may frustrate defendant's ability to determine amount in
2 controversy from complaint). No counter-veiling consideration applies to federal
3 question jurisdiction, which is governed by stricter well-pleaded complaint rules.

### E. SANCTIONS REMAIN WARRANTED.

Paramount's leading argument in its Notice of Removal was not supported, and it misstated the case holdings (*see* moving papers).  Paramount then withdrew its leading argument in its Opposition (*see* above).  Nevertheless, Paramount hopes to avoid sanctions – by asserting **new** mischaracterizations about those cases.

First, it reframes *Ho v. Pinsukanjana,* 2018 U.S.Dist.LEXIS 89384 (N.D.Cal. 2018) as holding that a cross-complaint "could be relevant in determining the contractual arrangement (or lack thereof)." (Dkt. 20, Page ID 543:22-25.) However, the Capote Trust pointed out in its moving papers how Paramount's first *Ho* quote was sourced from Ho's facts, and was not authority on the removal issue. Paramount's attempt to "pivot" to a different alleged relevant quote is worse, because that quote only concerned a motion to strike where certain allegations were allegedly "improper and scandalous."  (*Id.* at *5.) Nor do Paramount's other "explanations" of the cases cited fare any better.

### III.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests this Court to enter an Order remanding this action to the Los Angeles Superior Court forthwith.

Dated: February 12, 2021          Edwin F. McPherson
                                  Pierre B. Pine
                                  **McPHERSON LLP**

                                  By: */s/ Edwin F. McPherson*
                                       EDWIN F. McPHERSON
                                       Attorneys for Plaintiff