UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:20-cv-11470-SB (JPRx) | Date: | 2/26/2021 |
|---|---|---|---|

| Title: | *Alan U. Schwartz v. Paramount Pictures Corporation, et al.* |
|---|---|

| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |
|---|---|

| Victor Cruz | Katy Thibodeaux |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Edwin F. McPherson | David A. Grossman |
| | Nathalie Russell |

**Proceedings:**   **ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 12]**

  Before the Court is the motion to remand filed by Plaintiff Alan U. Schwartz, Trustee of the Trust Under Article Three of the Last Will and Testament of Truman Capote Dated May 4, 1981.  (Mot., Dkt. No. 12.)  Defendant Paramount Pictures Corporation opposes.  (Opp., Dkt. No. 20.)  Plaintiff has filed a reply.  (Reply, Dkt. No. 21.)  For the reasons below, the Court **DENIES** the motion.

### I.  BACKGROUND

**A.**   **Creation of the Work and Assignment**

  In 1958, Truman Capote wrote his famed novella "Breakfast at Tiffany's" (the Work).  (Compl., ¶ 16, Dkt. No. 1-2.)  The Work was first published in *Esquire* magazine on October 16, 1958.  (*Id.*)  On December 9, 1958, Capote entered into an agreement with Defendant (the 1958 Agreement), which granted Defendant the right to create a motion picture as a derivative of the Work.  (*Id.* ¶

20.)  Under the 1958 Agreement, Defendant produced a motion picture also titled "Breakfast at Tiffany's" (the Film).  (*Id.* ¶ 21.)  The Film, starring Audrey Hepburn and George Peppard, received critical acclaim and garnered several awards.  (*Id.* ¶¶ 21-22.)

Capote died on August 25, 1984.  (*Id.* ¶ 23.)  Under the Copyright Act of 1909, Capote died during the initial term of the Work's copyright (1958-1986).  (*Id.*)  Because Capote died childless and unwed, but testate, his interest in the Work reverted to his estate (the Estate).  (*Id.* ¶¶ 23-24.)  The Estate renewed the Work's copyright on April 18, 1986.  (*Id.* ¶ 24.)  On July 1, 1990, the Estate assigned all interests in the Work to Plaintiff.  (*Id.* ¶ 25.)  Plaintiff alleges that as a result of the Supreme Court's decision in *Stewart v. Abend*, 495 U.S. 207 (1990), Plaintiff had "regained exclusive ownership and control" over the intellectual property rights to the Work and its derivatives during the renewal period, which left Defendant with no ownership rights.  (*Id.* ¶¶ 26-30.)

B.   **The 1991 Agreement**

At some point after Capote's death, the parties began negotiations to allow Defendant the continuing right to distribute the Film and to grant Defendant an option to create an additional motion picture based on the Work.  (*Id.* ¶¶ 31-36.)  Plaintiff alleges that Defendant "made it very clear" that it would produce a remake of the Film shortly after an agreement was reached.  (*Id.* ¶¶ 37-45.)  On or around August 13, 1991, the Estate and Plaintiff entered into an agreement with Defendant (the 1991 Agreement), which, among other things, granted Defendant the right to distribute the Film worldwide and gave it "certain rights to produce future productions based upon the Work" within the renewal period.  (*Id.* ¶ 46.)

Under the 1991 Agreement, there would be an Initial Option Period from August 14, 1991 through February 14, 1993.  (*Id.* ¶ 48.)  Defendant paid Plaintiff $100,000 upon execution of the 1991 Agreement to exercise this option.  (*Id.*)  The 1991 Agreement also contained a Second Option Period from February 14, 1993 through August 14, 1994.  (*Id.* ¶ 49.)  Defendant paid Plaintiff $75,000 to exercise this option on February 8, 1993.  (*Id.*)  After the expiration of the Second Option Period, Plaintiff alleges there was a "six-year reversionary period" under which all rights (other than Defendant's rights to the Film) reverted to Plaintiff from August 14, 1994 through August 14, 2000.  (*Id.* ¶ 50.)  Following the reversionary period, Defendant received an additional three-year option (Additional Option Period) "to produce further Motion Pictures based upon the work" from August 14, 2000 to August 14, 2003.  (*Id.* ¶ 52.)  Defendant paid $300,000 to exercise its purchase

option on August 8, 1994. (*Id.* ¶ 54.)  However, Plaintiff failed to produce any motion picture by August 14, 2003, and as such, Plaintiff alleges that all rights (other than Defendant's rights to the Film) reverted to Plaintiff on that date. (*Id.* ¶ 58.)

C.     **Plaintiff Seeks to Produce Television Series Based on the Work**

In January 2020, Plaintiff explored creating a television series based on the Work. (*Id.* ¶ 60.)  Plaintiff received numerous, high-dollar value bids for the project. (*Id.* ¶ 62.)  Three or four weeks into the bidding process, Defendant contacted Plaintiff's agent to request information about the project. (*Id.* ¶ 63.)  Later, Defendant asserted it had reviewed its contractual rights and discovered that it shared in the rights to the project with Plaintiff. (*Id.* ¶ 64.)  Defendant then demanded that Plaintiff cease and desist further discussions with third parties. (*Id.*)  Plaintiff acceded to Defendant's demand; however, Plaintiff reiterated that it, not Defendant owned exclusive control to such rights. (*Id.* ¶ 65.)

At some point after this impasse, the parties commenced negotiations to co-produce a television series. (*Id.* ¶¶ 66-67.)  The dispute over ownership of the Work proved to be too much, however, and negotiations ultimately "came to a screeching halt" in May 2020 when Defendant decided that it "wanted the project" for a "feature" instead of a television project. (*Id.* ¶¶ 68-72.)  Plaintiff was informed that there was a screenplay of the Work (the Screenplay) that Defendant's President of Productions "liked" and that it would have to continue negotiations with Defendant's features department. (*Id.* ¶¶ 73-74.)  Ultimately, Defendant abruptly terminated all discussions with Plaintiff, asserting that it owned the rights to produce a film based on the Work in perpetuity. (*Id.* ¶¶ 75-76.)

D.     **Plaintiff's Prelitigation Activities and Filing of the Lawsuit**

On April 28, 2020, Plaintiff's attorney sent Defendant a letter explaining that under its interpretation of the 1991 Agreement and the Supreme Court's decision in *Abend*, the Estate, not Defendant, owned rights to the Work. (Declaration of David Grossman (Grossman Decl.), ¶ 4, Dkt. No. 20-1, Ex. D,[1] Dkt. No. 20-5.)  On August 19, 2020, Plaintiff sent Defendant a demand letter, which included a draft complaint for (1) copyright infringement and (2) declaratory relief, to be filed in this District. (Grossman Decl., ¶ 5, Ex. C, Dkt. No. 20-4.)  In response, Defendant

---

[1] The Court refers to Defendant's Exhibit C and Exhibit D in the order the they were filed on the Court's electronic filing system.

noted that Defendant would seek attorney's fees under Section 505 of the Copyright Act if Plaintiff filed its contemplated lawsuit.  (Declaration of Edwin F. McPherson (McPherson Decl.), ¶ 3, Ex. 1, Dkt. No. 12-1.)

On November 4, 2020, Plaintiff commenced the instant action in Los Angeles County Superior Court.  Plaintiff's complaint brings a single claim for declaratory relief, omitting the previously threatened copyright infringement cause of action.  Plaintiff's complaint seeks a judicial declaration that:

(a) Plaintiff owns all rights, title, and interest in and to Capote's Work;

(b) Those rights have not been sold, assigned, or otherwise transferred to Defendants, or any of them;

(c) Defendants have no present or future rights to sell, distribute, license, or otherwise exploit Capote's Work, or any portions or derivative works thereof, other than the continued distribution of the [Film]; and

(d) The Paramount Screenplay is a derivative work of Capote's Work.

(Compl., ¶¶ 79(a)-(d).)  Defendant removed the action on December 18, 2020 (Not. of Removal, Dkt. No. 1) and Plaintiff filed the instant motion on January 19, 2021.

## II.   LEGAL STANDARD

There is a strong presumption against removal jurisdiction, and the removing party has the burden of establishing the propriety of removal.  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).  Removal jurisdiction is based entirely on federal statutory authority.  *See* 28 U.S.C. §§ 1441-55.  A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction."  28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1331, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Whether a claim "arises under" federal laws must be determined by reference to the "well-pleaded complaint."  *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).  It is not enough for removal purposes that a federal question may arise during the litigation in connection with a defense or counterclaim.  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

To determine if copyright jurisdiction exists, the Ninth Circuit employs the three-part test established by the Second Circuit in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964). Under the *T.B. Harms* test, an action "arises under" the Copyright Act if, and only if: "(1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control the claims." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) (citation omitted); *see also Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1381 (9th Cir. 1988) ("We have settled on Judge Friendly's formulation of copyright jurisdiction law [in *T.B. Harms*] as our test to determine jurisdiction in cases such as this one.").

"The test outlined in *T.B. Harms* is essentially a reiteration of the 'well-pleaded complaint' rule that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint." *Scholastic Entm't, Inc. v. Fox Entm't Grp.*, 336 F.3d 982, 986 (9th Cir. 2003) (citation omitted). Applying this test, "courts have consistently dismissed complaints in copyright cases presenting only questions of contract law." *Id.* (citation omitted). But "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22.

### III.   DISCUSSION

Defendant's principal contention is that removal is appropriate because Plaintiff's complaint implicates federal copyright law by seeking a declaration that the Screenplay is a derivative work. (Opp. at 10-14.) Because the Court agrees, it does not reach the secondary argument that the complaint requires a construction of the *Abend* reversion under the Copyright Act. (*Id.* at 14-21.)

A.   **Plaintiff's Request for a Declaration that the Screenplay is Derivative of the Work Implicates the Copyright Act.**

Plaintiff contends that even though the complaint involves a copyright, it does not "arise under" the Copyright Act because "the word 'copyright' is not so compelling as to invoke federal jurisdiction upon its mere mention." (Mot. at 13 (quoting *Topolos v. Caldewey*, 698 F.2d 991, 993 (9th Cir. 1983).) Rather, Plaintiff suggests that this action is fundamentally contractual in nature. (*Id.* at 14.) While the complaint raises a significant contract question, Plaintiff asks for more than contract interpretation.

Specifically, "Plaintiff desires a judicial determination that . . . [t]he Paramount Screenplay is a derivative work of Capote's work." (Compl., ¶ 79(d).) Defendant asserts that such a declaration necessarily requires the Court to determine whether the Screenplay is substantially similar to the Work in violation of the Copyright Act. (Opp. at 10.)

The owner of a copyright holds the exclusive rights to prepare derivative works. 17 U.S.C. § 106(2). The Copyright Act defines "derivate works" as:

> work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

In assessing whether a work is derivative, the Ninth Circuit requires proof of substantial similarity—the same standard used to determine infringement. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984). "[A] work will be derivative only if it would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of a copyright proprietor of such pre-existing work." *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir. 1988) (quoting 1 Nimmer on Copyright § 3.01 (1986)). To assess infringement, courts examine whether the two works in question are "substantially similar." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010). Whether two works are "sufficiently similar to warrant a finding of infringement [is] a clear question of copyright law." *Scholastic Entm't*, 336 F.3d at 987. Plaintiff's complaint therefore "requires an interpretation of the Copyright Act." *JustMed*, 600 F.3d at 1124.

Plaintiff acknowledges that the declaration sought would require a comparison of the two works for substantial similarity, but argues that "[n]o case suggests that a mere comparison of works to determine the contractual right to use them amounts to 'infringement.'" (Reply at 13 (emphasis omitted).) This argument misses the point: Plaintiff seeks at least two separate declarations: (1) Plaintiff owns the copyright under the contract (a contract question); and (2) the Screenplay is a derivative work that infringes the copyright (a copyright-law

question).  As the master of the complaint, Plaintiff elected to request a declaration on both questions.  On the derivative-work declaration, the Court must apply principles of copyright law because the contract does not supply its own comparison standard in place of the one under the Copyright Act.[2]

### B. The "Merely Incidental" Test is Incompatible with T.B. Harms.

Plaintiff contends that despite his request for a declaration that the Screenplay is a derivative work, federal jurisdiction does not lie because this copyright issue is "merely incidental" to the dominant contract interpretation issues.  (Mot. at 17, 19-21.)

In invoking this "merely incidental" test, Plaintiff relies on *Stepdesign, Inc. v. Research Media, Inc.*, 442 F. Supp. 32 (S.D.N.Y. 1977).  (Mot. at 15.)  But the Second Circuit expressly rejected *Stepdesign*'s reliance on this test as a fundamental misapplication of *T.B. Harms*:

> Some courts, purporting to follow *T.B. Harms,* have cited it for the proposition it rejected—that federal courts must look beyond the face of the complaint to ascertain whether the "primary and controlling issue" or "essence" of the dispute is a matter of federal copyright law or state contract law. *See, e.g., . . . Stepdesign, Inc. v. Research Media, Inc.,* 442 F.Supp. 32, 34 (S.D.N.Y.1977) (applying *T.B. Harms* and dismissing for lack of jurisdiction, even though plaintiff sought an injunction, because "any finding of infringement would be clearly incidental to the main purpose of plaintiff's suit"). Nothing can be found in Judge Friendly's opinion to support the use of the "principal and controlling issue" test.

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 351 (2d Cir. 2000).

When Defendant pointed out that Plaintiff was relying on repudiated law, Plaintiff dismissed *Bassett* as "irrelevant" because the incidental test is "alive and well" in the Ninth Circuit.  (Reply at 14 & 14 n.4.)  But that test is neither alive nor

---

[2] For similar reasons, the Court cannot ignore the jurisdictional significance of the requested declaration of a derivative work because it is "only briefly mentioned twice" or because it is "forward looking."  (Reply at 14-15.)  No matter how brief or forward looking, the declaration seeks a determination whether a specific work, the Screenplay, violates the copyright because of its substantial similarity.

well in this circuit. In applying the *T.B. Harms* test, the Ninth Circuit has cautioned that "[o]nly where ownership is the sole question for consideration are federal courts without jurisdiction." *Topolos*, 698 F.2d at 994.³ The court further explained:

> [Plaintiff] has fulfilled those requirements necessary for federal jurisdiction. He alleged that pursuant to his publishing contract [Defendants] took out and held in his behalf the copyright to works which he had co-authored, thus establishing him as beneficial owner of the copyright. By itself, that allegation would not give rise to federal jurisdiction, but [Plaintiff] also contended that . . . [Defendants] infringed his copyright by publishing books which in substantial part copied the book originally written by him. These latter allegations are sufficient to confer subject matter jurisdiction on the district court.

*Id.*

A straightforward application of *Topolos* demonstrates that jurisdiction exists here. Copyright ownership is not the sole issue in this case; rather, Plaintiff seeks a declaration that the Screenplay is a derivative work, which would require an interpretation of copyright law using the infringement standard. *See* discussion *supra*. The unpublished district court cases relied upon by Plaintiff are not to the contrary. None applied, much less created, a "merely incidental" test; indeed, none even required an interpretation of the Copyright Act. *See Hepburn v. Concord Music Grp., LLC*, No. 2:14-cv-09237-CAS (RZx), 2015 WL 2084576, at *4 (C.D. Cal. May 4, 2015) ("[T]he complaint does not indicate that it will require interpretation of the Copyright Act[]."); *Harris v. Proteus E2 Productions, Inc.*, No. CV 12-1130 PA (VBKx), 2012 WL 13012731, at *2 (C.D. Cal. Apr. 9, 2012) ("[T]he 'sole question' for consideration in Plaintiff's Complaint is ownership of

---

³ *See also Vestron*, 839 F.2d at 1381 (citing *Topolos* for the proposition that "where a suit is for a naked declaration of copyright ownership without a bona fide infringement claim, federal courts decline jurisdiction"); *Scholastic Entm't*, 336 F.3d at 988 (finding that jurisdiction fails because "the ownership issue is the sole question presented for review").

the copyrights at issue.").[4]  A case cannot stand for a proposition that it was not called upon to address.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is **DENIED**.

0/18

---

[4] The two other cited cases are even farther afield: *Brush Creek Media, Inc. v. Boujaklian*, No. C-02-3491 EDL, 2002 WL 1906620, at *6 (N.D. Cal. Aug. 19, 2002) concluded that "an infringement action [is precluded] while a copyright application is merely pending"; and *Fox v. iVillage*, No. C-05-3327 SC, 2005 WL 3157413, at *2 (N.D. Cal. Nov. 23, 2005) found no jurisdiction in a case that did not raise a copyright issue.